IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JAMES A. HALL                                                                                               PLAINTIFF

    v.    Civil No. 3:22-cv-03063-TLB-MEF

META, INC.; FACEBOOK, INC.;
and MARK ZUCKERBERG                                                                            DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

  Plaintiff, James A. Hall ("Hall"), has filed this action asserting two claims: (1) a violation of his First Amendment rights; and (2), seeking a declaratory judgment finding 47 U.S.C. § 230(c) to be unconstitutional. He sues Meta, Inc., Facebook, Inc., and Mark Zuckerberg (together "Facebook"). He proceeds *pro se* and *in forma pauperis* ("IFP"). The Honorable Timothy L. Brooks, United States District Judge, has referred to the undersigned, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the issue of whether the Complaint should be served. The case is, therefore, before the Court for preservice screening pursuant to 28 U.S.C. § 1915(e)(2).

        **I.**  **BACKGROUND**

  According to the allegations of the Complaint, Hall established a Facebook account prior to July of 2009. (ECF No. 1 at 6). On November 1, 2022, Hall reports that he was indefinitely banned from Facebook. *Id.* at 2. At the time, he was a candidate for the Arkansas House of Representatives, District 5, with the general election slated for November 8, 2022. *Id.* Hall indicates he had "approximately 2.2 thousand friends and over 300 followers and the ability of [his] approximately twelve thousand plus constituents to hear, and comment on, the views and content of the speech he was expressing." *Id.* at 15. Hall indicates he used his "Facebook

account to speak directly to his followers and the public at large," and he considered his account to be "an instrument of his campaign." *Id.* at 6-7. Hall believes the mainstream media was "biased against him." *Id.* at 6.

Hall maintains his account became a "public forum for speech by, to, and about government policy." (ECF No. 1 at 7). He asserts that:

> [t]he ban directly impacted Plaintiff's ability to communicate with family and friends and politically, including: (1) daily communications necessitated by his unquestioned position as a candidate for the 2022 Election some five days away from [November 3, 2022]; (2) campaigning for the Arkansas State House; (3) fundraising for the campaign; (4) laying a foundation for a potential 2024 Arkansas State House campaign.

*Id.* at 14.

The stated reason for the ban was a violation of community standards which Hall describes as "non-existent or broad, vague, and ever-shifting standards." (ECF No. 1 at 2). Hall was advised that the ban would last until at least November 4, 2022. *Id.* at 2. Hall says he was informed the ban would last at least two days but no more than seven days. *Id.* Hall asserts his Facebook account "had never been warned, censored, or flagged by Facebook for the content of his posts except for conservative political speech." *Id.* at 16. He indicates the ban was "over a sarcastic, humorous and satirical post . . . Republicans vote Nov 8—Democrats vote Nov 9th." *Id.* at 17. Hall indicates Facebook has served warnings "to members of President Trump's family, Team Trump, other Facebook Users, and Putative Class Members that its ban extends to anyone attempting to post Donald J. Trump's voice."[1] *Id.* at 2. Hall then refers the Court to *Trump v. Facebook, et al.*, Case No. 1:21-cv-22440 (S.D. Fla.).[2] *Id.* Hall has styled his Complaint after

---

[1] Plaintiff indicates he is "not requesting Class Action" status. (ECF No. 1 at 19).
[2] This case was transferred to the Northern District of California pursuant to Facebook's forum selection clause. *Trump v. Facebook, et al.,* Case No. 21-cv-09044. The case is now stayed pending the outcome of an appeal to the

2

*Trump v. Facebook* and appears to have taken large portions of the content from the complaint in that case.  *See, e.g., Id.* at 7.

Hall maintains Facebook has engaged in "impermissible censorship" in a "misguided reliance on the Communications Act, 47 U.S.C. § 230."  (ECF No. 1 at 1).  Hall alleges Facebook acted in "willful participation in joint activity with federal actors.  Defendant Facebook's status thus rises beyond that of a private company to that of a state actor.  As such, [Facebook] is constrained by the First Amendment right to free speech in censorship decisions it makes regarding its Users."  *Id.*; *see also Id.* at p. 12-14.

Hall asks the Court to:

> Declare that Section 230 on its face is an unconstitutional delegation of authority, that the Defendants' actions directed at the Plaintiff and are a prior restraint on his First Amendment right to free speech, to order the Defendants to restore the Facebook account of Plaintiff, and to prohibit Defendants from exercising censorship, editorial control or prior restrain in its many forms over the posts of James A. Hall, and Putative Class Members.

*Id.* at 2.  Hall further contends that § 230 is "unconstitutional on its face" and "as it has been interpreted to immunize social media companies to censor constitutionally protected speech on the basis of its supposedly objectionable content and viewpoint."  *Id.* at 18-19.

As relief, Hall requests an award of compensatory and punitive damages.  Hall also seeks an injunction ending Facebook's ban on his account and prohibiting Facebook from using its warning labels and misclassification of content on his account.[3]  Further, he seeks a judgment declaring § 230(c) to be unconstitutional.

---

Court of Appeals for the Ninth Circuit in *Trump v. Twitter, et al.*, Case No. 21-cv-08378 (N.D. Cal) (Ninth Circuit Case No. 22-15961).
[3] The ban on Hall's account would have ended by no later than November 8, 2022.

## II.    APPLICABLE STANDARD

The Court is obliged to screen a case in which the plaintiff seeks to proceed IFP as early as possible and prior to service of process being issued.  On initial review, the Court must dismiss a complaint, or any portion of it, if it contains claims that: (a) are frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c), seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

A claim is frivolous when it "lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987); *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988).  A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (cleaned up).

The Court bears in mind, however, that when "evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  "Although pro se complaints are to be construed liberally, they still must allege sufficient facts to support the

claims advanced. Pro se litigants must set forth [a claim] in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Stringer v. St. James R-1 School Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (cleaned up).

### III.    DISCUSSION

#### A.  Claim One—Violation of the First Amendment

Hall's first claim is that Facebook's ban on his account violated the First Amendment to the United States Constitution. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press." U.S. Const. amend I.

It is settled law that the First Amendment secures the "freedom of expression upon public questions. . . . The constitutional safeguard, we have said, 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)). "In the realm of private speech or expression, government regulation may not favor one speaker over the other." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 828 (1995). Viewpoint discrimination is merely an "egregious form of content discrimination." *Id.* at 829.

"The Constitution structures the National Government, confines its actions, and, in regard to certain individual liberties and other specified matters, confines the actions of the States." *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 619 (1991). "While [the First Amendment] is not a restraint on the powers of the states, the states are precluded from abridging the freedom of speech or of the press by force of the due process clause of the Fourteenth Amendment." *Grosjean v. American Press Co.*, 297 U.S. 233, 243 (1936).

In this case, Hall does not dispute that Facebook is a private entity. Instead, he argues Facebook is a public forum and therefore became a state actor. Additionally, Hall presents the argument that Facebook's cooperation with, or having been influenced by, various political actors, including the President of the United States, and various federal agencies, including the Center for Disease Control, has transformed it into a state actor.

"While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general and social media in particular." *Packingham v. North Carolina*, ___ U.S. ___, 137 S. Ct. 1730, 1735 (2017) (quoting *Reno v. American Civil Liberties Union*, 521 U.S. 844, 868 (1997)). Here, Hall's first claim requires the Court to examine the relationship between the First Amendment and a major social media provider, Facebook.

"One great object of the Constitution is to permit citizens to structure their private relations as they choose subject only to the constraints of statutory or decisional law." *Edmondson*, 500 U.S. at 619. State action jurisprudence exists to aid in the determination of:

> where the governmental sphere ends and the private sphere begins. Although the conduct of private parties lies beyond the Constitution's scope in most instances, governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints.

*Edmonson*, 500 U.S. at 620. The threshold question, therefore, is whether state action exists. *Id*.

"[W]hen a private entity provides a forum for speech, the private entity is not ordinarily constrained by the First Amendment because the private entity is not a state actor. The private entity may thus exercise editorial discretion over the speech and speakers in the forum." *Manhattan Comm. Access Corp. v. Halleck*, ___ U.S. ___, 139 S. Ct. 1921, 1930 (2019) (holding

public access cable company was not a public forum).  "[A] private entity who provides a forum for speech is not transformed by that fact alone into a state actor."  *Id.*

A private entity may become a state actor "when (1) the private entity performs a traditional, exclusive public function; or (2) the government acts jointly with the private entity." *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928-29 (8th Cir. 2022) (cleaned up).  "The only unyielding requirement is that there be a close nexus not merely between the state and the private party, but between the state and the alleged deprivation itself."  *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007).

The concept that a private social media entity becomes a state actor by virtue of the creation of a public forum has been rejected by the Court of Appeals for the Ninth Circuit in *Prager Univ. v. Google LLC*, 951 F.3d 991 (9th Cir. 2020).  *Cf. United States v. Stevenson*, 727 F.3d 826, 830 (8th Cir. 2013) (Internet provider Google did not become a government agent by virtue of a reporting requirement).  In *Prager,* the argument presented was that "YouTube is a state actor because it performs a public function."  *Id.* at 997.  In such context, the Court of Appeals for the Ninth Circuit noted that while "[i]t was true that a private entity may be deemed a state actor because it performs a public function," the "relevant function must have been 'traditionally the *exclusive* prerogative of the [s]tate.'"  *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982)).  The Ninth Circuit held that "YouTube may be a paradigmatic public square on the Internet, but it is 'not transformed' into a state actor solely by 'provid[ing] a forum for speech.'" *Id.* at 997 (quoting *Manhattan Comm. Access*, 139 S. Ct. at 1934)).

Of particular interest in this case, is the decision of the Northern District of California in *Trump v. Twitter, et al.,* Case No. 21-cv-08378, ___ F. Supp. 3d ___, 2022 WL 1443233 (May 6,

2022) ("Twitter"). The operative complaint in *Twitter* contained many of the same factual and legal allegations as made in Hall's complaint. In fact, a large number of the paragraphs are virtually word for word with the exception that Facebook is substituted in the place of Twitter. *See, e.g.,* ¶¶ 3-5, 59-76, 82-88, 94-95, 98-99, 103, 129, 132, 141-148.[4]

In *Twitter,* the case was before the Court on a motion to dismiss. The court noted that the specific question it must address was "have plaintiffs plausibly alleged that Twitter was behaving as a state actor pursuant to 'a government policy' when it closed their accounts?" *Id.* at *3. The court first found no plausible argument that any First Amendment injury was caused "by a rule of conduct imposed by the government." *Id.* The Court also pointed out that the plaintiffs' own explanations of why their accounts were closed indicated Twitter acted in "response to factors specific to each account, and not pursuant to a state rule of decision." *Id.* at *4. Second, the court found that the amended complaint did not "plausibly allege that Twitter could fairly be deemed a state actor." *Id.*

Similarly, the Court finds that Facebook cannot to be deemed to be a state actor when it applied its own "community standards" when placing a temporary ban on Hall's account. First, the alleged First Amendment deprivation did not result "from the exercise of a right or privilege having its source in state authority." *Wickersham*, 481 F.3d at 597. Second, Facebook was not "performing a traditional, exclusive public function" or acting jointly with the government in making the decision. *Roberson*, 42 F.4th at 928. While Facebook undoubtedly provides a public forum, the alleged government involvement is at best speculative. Under traditional state action analysis, Hall has failed to state a plausible First Amendment claim against Facebook.

---

[4] The Complaint contains 151 numbered paragraphs. (ECF No. 1). Of the remaining paragraphs, many are taken straight from the complaint in *Trump v. Facebook, et al.*, Case No. 21-cv-09044 (N.D. Cal.).

### B. Claim Two—Constitutionality of § 230

Hall's next claim is for entry of a declaratory judgment that Section 230(c) of the Communications Act is unconstitutional. Section § 230(c) provides as follows:

**(c) Protection for "Good Samaritan" blocking and screening of offensive material**

**(1) Treatment of publisher or speaker**

No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another content provider.

**(2) Civil Liability**

No provider or user of an interactive computer service shall be held liable on account of—

    **(A)** any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

    **(B)** any action taken to enable or make available information content providers or others the technical means to restrict access to material described in paragraph (1).

47 U.S.C. § 230(c).

Whether Hall may proceed with this claim requires the Court to examine the concept of standing. "[T]o satisfy the case or controversy requirement of Article III, which is the irreducible constitutional minimum of standing, a plaintiff must generally speaking demonstrate that [1] he has suffered injury in fact, [2] that is fairly traceable to the actions of the defendant, and [3] that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (cleaned up).

To establish an injury-in-fact, Hall must have suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Hall makes no assertion that § 230 itself has had a "chilling effect" on his actions. *Rodgers v. Bryant*, 942 F.3d 451, 454 (8th Cir. 2019) (law's chilling effect can create standing—challenge to Arkansas law). Instead, Hall has alleged that Facebook would not have banned his account but for the existence of § 230. As in the *Twitter* case, the Court "declines to accept such speculative and conclusory allegations as grounds for a declaratory judgment claim." *Twitter*, at * 8.

Further, the Court does not believe Hall's allegations are sufficient under the second and third constitutional requirements of standing. The second requirement necessary to establish constitutional standing is that the injury "be fairly traceable to the challenged [law], and not the result of the independent action of some third party." *Lujan*, 504 U.S. at 560. The third requirement is that it "be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561. The alleged injury-in-fact caused by the ban on his Facebook account cannot be said to be fairly traceable to § 230, and finding § 230 unconstitutional would have only the most speculative effect on Facebook's actions. In sum, Hall lacks standing to challenge the constitutionality of § 230.

## IV.   CONCLUSION

For the reasons stated, it is recommended that this case be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file**

**timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of December 2022.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE